# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Dr. Sanjay Arora,
    **Plaintiff**

_____ /

Buckhead Family Dentistry, Inc.

Dr. Travis Paige

Cigna Health and Life Insurance Company

Global Dental Solutions, LLC

Brad Abramson

    **Defendants**

_____ /

Case: 1:16-cv-01806      (B-Deck)

Assigned To: Moss, Randolph D.

Assign. Date: 9/9/2016

**Dr. Sanjay Arora**
**In pro per**
1829 California St. NW, Unit 202
Washington, DC 20009
(248) 730 1920
sanjayk.arora@yahoo.com

_____ /


## PLAINTIFF SANJAY ARORA'S 1ST AMENDED COMPLAINT
## AS A MATTER OF COURSE PURSUANT TO FRCP 15(a)(1)(A)
## AND DEMAND FOR JURY TRIAL


**NOW COMES Plaintiff, Dr. SANJAY ARORA (Arora),** In Pro Per for his complaint

against (1) Buckhead Family Dentistry Inc. **(Buckhead)** and Dr. Travis Paige **(Paige)**

**(Collectively Dentist Defendants);** (2) Cigna Health and Life Insurance Co. **(CIGNA);**

RECEIVED
DEC 2 7 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

and (3) Global Dental Solutions, LLC **(Global),** and Brad Abramson **(Abramson),**

**(Collectively Global Defendants)** and states as follows:

## 1ST AMENDED COMPLAINT
## AS A MATTER OF COURSE PURSUANT TO FRCP 15(a)(1)(A)

1. Plaintiff has filed the instant 1st amended complaint as a matter of course pursuant to FRCP 15(a)(1)(A) which states in part as follows:

> FRCP 15(a) Amendments before Trial.
>
> (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or…

## NATURE OF SUIT

2. While filing his initial complaint, by mistake Plaintiff identified nature of the instant complaint as # 362 (Medical Malpractice).

3. In fact the nature of instant law suit should be # 190 (for fraud, and breach of contract etc.)

4. Plaintiff will file a motion to change the nature of the case in 2-4 days.

## JURISDICTION

5. This court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship since Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

6. This Court has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367.

## VENUE

7. Venue is proper because Plaintiff resides in this Court's jurisdiction, has suffered injury in this District and is subject to personal jurisdiction in this District; Defendant CIGNA conducts business in this Court's jurisdiction; since about 2001 Global Defendants expanded and conducted business nationwide including in this Court's jurisdiction; and the injury caused by Dentists to Plaintiff in the State of Georgia continued after Plaintiff left the State of Georgia.

## THE PARTIES

8. Plaintiff. ARORA resides and works at 1829 California St. NW, Unit 202, in Washington DC.;

9. Dentist Defendants BUCKHEAD and PAIGE are located at 3379 Peachtree Rd #850. Atlanta, GA 30326.

10. CIGNA is located at 601 Pennsylvania Avenue, NW, Suite 835, South Building, Washington, DC 20004.

11. Global Defendants GLOBAL and ABRAMSON, are producers of dental restorations located at 8215 Roswell Road, Building 500, Atlanta, GA 30350 and are represented by their attorneys (Stephen A. Horvath, Esquire (DC Bar #417137), 9990 Fairfax Boulevard, Suite 400, Fairfax, Virginia 22030: (703) 385-1000; (703) 385-1555 (Fax)).

## STANDINGS

12. Plaintiff has standing to bring this action because he has been directly affected by the conduct complained herein. His injuries are proximately related to the conduct of Defendants and therefore Plaintiff is entitled to damages from Defendants.

## STATEMENT OF FACTS

9. Buckhead is a dental practice in Atlanta, GA, with Paige, DDS, acting as CEO, CFO, and Secretary.

10. From about August 2010 to August 2014, Plaintiff was enrolled full-time as a PhD Student and Graduate Research Assistant at the Georgia Institute of Technology, in Atlanta, GA.

11. Plaintiff was a patient at Buckhead for two years, from about June 2012 to April 2014.

12. CIGNA (DHMO) was Arora's dental insurance carrier in 2012 and 2014.

13. For the time period during which Arora was covered by CIGNA, Dentists were an in-network provider in CIGNA's DHMO Network

14. For the time during which Arora was insured by CIGNA, CIGNA acted as a fiduciary of Arora; Cigna was responsible to provide due care to Arora; was responsible for credentialing Dentists and was responsible for continuously monitoring the performance of Dentists to assure that Dentists meet the standards of patient care as set out by CIGNA..

15. In late 2013 Plaintiff was notified of a cracked tooth (#30 molar) and was recommended to install a crown on said tooth by Dentists. Dentists performed two procedures, one to prepare the tooth for a temporary crown and to take measurements

for a permanent crown on or about January 21, 2014, and another to install the permanent crown on or about February 25, 2014.

16. Plaintiff experienced delays in installing the permanent crown due to the busy schedule of Dr. Paige.

17. Plaintiff paid Buckhead all the invoiced amounts through co-pays. CIGNA was responsible for covering a percentage of Buckhead fees for the crown and related work.

18. During the removal of the temporary crown on February 25, 2014, Dr. Paige was not in the room and did not oversee his assistant, who proceeded to hastily remove the temporary crown. The assistant was unable to do so after several unsuccessful tries.

19. This caused Plaintiff discomfort.

20. Plaintiff vocalized his stern opposition to the assistant continuing with her haphazard approach. The assistant was very rude and expressed her impatience, but eventually relented to seek Dr. Paige's help.

21. Thereafter, Dr. Paige oversaw the removal of the temporary crown, as well as the placement of the permanent crown.

22. Within days of having the permanent crown installed, Plaintiff experienced severe discomfort with both his tooth (#30) and the surrounding gum area closest to his tongue.

23. The said gum area appeared discolored with a dark ring.

24. At various times in March, 2014, Plaintiff called Buckhead repeatedly voicing his concern and relating the symptoms he experienced as follows:

- Severe pain and discomfort in and around the tooth nerve and radiating through the gum line.

- This feeling repeatedly appeared as an acute burning or itching sensation.

25. Plaintiff was never directed to Dr. Paige by Buckhead front office staff, nor did Dr. Paige ever call Plaintiff to seek additional information.

26. Rather, Plaintiff's interactions were initially limited to the front office staff. In repeated phone conversations, the office front staff noted this type of reaction was 'normal', and they continually told Plaintiff to wait it out, as everything was likely healing as expected.

27. Plaintiff proceeded to change dentists and began receiving cleanings and other basic treatment at a separate and unrelated practice, Collins Family Dentistry.

28. By April 2014, Dr. James Collins of Collins Family Dentistry became Plaintiff's primary dentist through the CIGNA DHMO network.

29. Dr. Collins acknowledged the irritation in Plaintiff's gum near tooth #30.

30. During this time of transition from one office to another, Plaintiff had contacted CIGNA several times via telephone.

31. On one of these calls, a CIGNA representative noted that Plaintiff's insurance policy restricted crown placements on a given tooth to once every several years and that he may wish to follow-up with Dr. Paige to resolve any issues for no additional fee.

32. On April 28, 2014, Plaintiff went back to visit Dr. Paige, who dismissed the gum irritation as a "bite issue" which could be resolved by filing the crown on tooth #30, as well as the tooth above, to improve the bite.

33. Unfortunately, said visit did little to help Plaintiff's acute discomfort.

34. Plaintiff sought consultation with a periodontist, Dr. Scott Bartruff, who confirmed the gum irritation. This consultation was held on May 13, 2014.

35. Dr. Bartruff asked Plaintiff about the composition of said crown installed by Dentists, indicating that a low quality porcelain-fused to metal crown could be composed of known irritants such as Nickel.

36. Plaintiff indicated to Dr. Bartruff on May 13, 2014, that the crown on tooth #30 was supposed to be of high-noble metal quality, which according to follow-up verification on CIGNA's website, contained over 60% gold, platinum and/or palladium.

37. Plaintiff also confirmed the crown's composition over the phone with Dentists' front office staff.

38. Dr. Bartruff referred Plaintiff to an endodontist, Dr. Melanie Burns. Plaintiff met Dr. Burns in a consultation on May 27, 2014. Dr. Burns acknowledged the discoloration and inflammation on Plaintiff's gum line near tooth #30 Dr. Burn's tests showed that tooth #30 was vital and not in need of endodontic treatment.

39. Plaintiff initiated an appeal with CIGNA to demand a full refund so that he could replace the crown and alleviate his severe chronic pain.

40. In formal letter correspondence dated July 10, 2014, in response to Plaintiff's appeal, CIGNA states they "investigate and take appropriate action on all quality of care concerns."

41. In particular, CIGNA documents that Plaintiff received a high noble metal crown on tooth #30. CIGNA denied Plaintiff's claim, finding that he "would remain responsible for the applicable patient copays on the covered services rendered..."

42. CIGNA also found that Dentists overcharged Plaintiff. According to a later follow-up call placed by Plaintiff to CIGNA, Dentists should not have charged a lab fee, as any lab fee was to be covered or not needed under the insurance policy. In addition, Buckhead failed to report the gingivectomy operation to CIGNA.

43. In said letter, CIGNA did acknowledge the history of Plaintiff's pain and allowed Plaintiff to get a new crown under the policy, though any out-of-pocket costs would need to be covered in full by Plaintiff.

44. On August 5, 2014, Plaintiff filed a HIPAA request to demand copies of all billing and medical related information, including the composition of the crown placed on tooth #30, from Dentists. As deemed appropriate by Federal law, Plaintiff provided Buckhead 30 days to comply with this request.

45. In August, 2014, Plaintiff became a patient of Dr. Michael C. Goldman. On September 2, 2014, Dr. Goldman removed the crown installed by Dr. Paige on tooth #30, and replaced it with a non-metal crown.

46. As of September, 2014, Plaintiff was no longer with CIGNA, and began a new insurance policy under his new employer's plan in October, 2014. Also Dentists did not comply with Plaintiff's HIPAA request within permitted time as stipulated by HIPAA.

47. Later pursuant to further phone calls from Plaintiff to Dentists, Dentists replied via email with the documentation satisfying Plaintiff's HIPAA request. The lab report

documenting the crown's materials on tooth #30, as invoiced by Global Defendants, showed the quality as "PFM Non Precious". The crown's metal interior was made of Nickel (61.2%), Chromium (25.8%), Molybdenum (11%), Silicon (1.5%), and a series of other metals at small (<1%) quantities.

48. Global Defendants produced a non-noble (nonprecious metal) dental crown for Arora's tooth #30.

49. CIGNA, in a letter dated July 10, 2014, acknowledged its "continuing effort to provide quality of care and service". CIGNA knew or should have known Dentists' fraud since CIGNA audited the quality of care provided by Paige, as documented in a letter dated July 10, 2014.

50. CIGNA failed to perform due diligence on the true nature of Arora's treatment and was negligent as to a complete, impartial and honest assessment of Arora's concerns, and CIGNA willfully withheld key information from Arora with respect to the quality of care offered by Dentists so that he could not make the choices that were in his best interest.

51. CIGNA neglected and failed to provide due care to Arora.

52. In a letter dated June 13, 2016, addressed to Plaintiff, Dentists indicated that Dentists were not aware of the lower quality crown that was substituted by Global Defendants and stated further that Dentists expect to receive "nothing less" than what was prescribed by Dentists from Global Defendants

53. Said lower quality substitution by Global Defendants, according to Dentists, was in total contrast to what is stated on Global Defendants' website, which states "All crown, bridge, and removable dental restorations will be constructed using the appropriate

materials and the best practices of any well run dental laboratory and will conform to the written specifications provided with each work order."

54. According to Dentists, Global Defendants (fraudulently) manufactured and delivered a lower quality crown instead of the higher quality crown explicitly prescribed and requested by Dentists. Dentist's said prescription request was reflected in the Dentists billing invoice to Plaintiff.

55. As stated herein, in Dentists' said letter of June 13, 2016, Dentists clearly allege that Global Defendants were directly responsible for said (fraudulent) substitution.

56. Further as stated herein the documents produced by Dentists in response to Plaintiff's HIPAA request also support Dentists' allegations against Global Defendants as to said fraudulent substitution.

57. In response to Plaintiff's Original Complaint, Global Defendants have filed two motions to dismiss said Original Complaint and a supporting brief therein (ECF #3, 4 and 5). In said response Global Defendants have alleged that they have manufactured and delivered a crown as prescribed and ordered by Dentists for Plaintiff.

58. Dentists and CIGNA neglected and failed to perform necessary and sufficient due diligence to verify the composition of the crown, even after multiple inquiries by Arora as to its composition and quality, as made evident by the letters from CIGNA and Dentists to Arora, dated July 10, 2014, and June 13, 2016, respectively.

59. Thus Dentists, CIGNA and Global Defendants knew or should have known that an inferior crown was fraudulently installed in Arora.

10

60. Further Dentists and CIGNA knew or should have known that Arora was (fraudulently) charged for a higher quality, more expensive crown although a lower quality crown was installed

61. Further CIGNA neglected and failed to do additional due diligence on Dentists even after CIGNA became aware of said fraud and overbilling by Dentists, and further CIGNA included Dentists in CIGNA's vetted and approved network of dentists and kept recommending Dentists to Plaintiff.

62. As a result of long-lasting, severe chronic pain and discomfort from about January 2014, the time at which the initial crown was installed by Dentists, and September 2014, the time at which this crown was removed, Plaintiff was forced to reduce his hours of work, thereby delaying his progress toward his PhD.

## CAUSES OF ACTION

### COUNT I

### Fraud

### Against Defendants Buckhead and Paige

63. Plaintiff Arora realleges preceding paragraphs and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

64. In response to Plaintiff's Original Complaint, Global Defendants have filed two motions to dismiss said Original Complaint and a supporting brief therein (ECF #3, 4 and 5).

In said response, Global Defendants have alleged that they have manufactured and delivered a (lower quality) crown as prescribed and ordered by Dentists for Plaintiff.

65.  Assuming without admitting Global Defendants' said pleadings are truthful, and then Dentists Buckhead and Paige (Dentists) knowingly made false statements and omissions concerning material facts as to the services and lower quality crown installed in Plaintiff and subsequent fraudulent invoicing for a higher quality crown and services.

66. Further Dentists have knowledge of the falsity of said statements.

67. Dentists intended that the false statements and omissions would induce Plaintiff to rely on them.

68. Plaintiff reasonably relied upon Dentists said false statements.

69. Plaintiff relied on Dentists' false statements and omissions to his injury.

70. Dentists' conduct was intentional, willful, wanton, and malicious. Dentists' had actual knowledge of the wrongfulness of the conduct and the high probability that injury to Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

71. Dentists' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Plaintiff Arora.

72. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Buckhead and Paige for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory

damages (including general and special damages), punitive damages and reimbursement for negative tax consequences resulting from a jury verdict in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems equitable, just and proper.

## COUNT II

### Negligent Misrepresentation

### Against Dentists Buckhead and Paige

73. Plaintiff realleges preceding paragraphs and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

74. Dentists knew or should have known that they were installing a lower quality crown while neglecting and representing to Plaintiff that they were installing a higher quality crown.

75. Further while invoicing Plaintiff for a higher quality crown and services, Dentists knew or should have known that they had installed a lower quality crown in Plaintiff and were negligent in invoicing for a higher quality crown.

76. Dentists Buckhead and Paige (Dentists) made misrepresentations and omissions concerning said material facts.

77. At the time of the misrepresentations and omissions, Dentists knew them to be false, made them without knowledge of the truth or falsity, or should have known them to be false.

78. Dentists intended that the misrepresentations and omissions would induce Plaintiff to rely on them.

79. Plaintiff justifiably relied on Dentists misrepresentations and omissions to his injury.

80. Dentists conduct was intentional, willful, wanton, and malicious. Dentists had actual knowledge of the wrongfulness of the conduct and the high probability that injury to Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

81. Dentists' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Plaintiff.

82. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Buckhead and Paige for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory damages (including general and special damages), punitive damages and reimbursement for negative tax consequences resulting from a jury verdict in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems equitable, just and proper.

## COUNT III

### Unjust Enrichment

### Against Dentists Buckhead and Paige

83. Plaintiff Arora realleges preceding paragraphs and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

14

84. Plaintiff conferred monetary benefits on Dentists by paying for the higher quality crown although Plaintiff was unaware that he actually received a lower quality crown. Further Dentists falsely asserted that they were unaware that they had actually received a lower quality of crown from Global Defendants.

85. Plaintiff conferred monetary benefits on Buckhead and Page (Dentists), who had knowledge thereof.

86. Dentists voluntarily accepted and retained the benefits conferred in exchange for health care services provided by Dentists to Plaintiff.

87. The circumstances are such that it would be inequitable for the Dentists to retain the benefits without providing the value thereof to Plaintiff. Plaintiff alleges he did not receive the stated services in response for the payments and benefits conferred onto Dentists.

88. Dentists' conduct was intentional, willful, wanton, and malicious. Dentists had actual knowledge of the wrongfulness of the conduct and the high probability that injury to the Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

89. Dentists' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Plaintiff.

90. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Buckhead and Paige for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory damages (including general and special damages), punitive damages and

reimbursement for negative tax consequences resulting from a jury verdict in a sum

to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such

other and further relief as this Court deems equitable, just and proper.

## COUNT IV

### Breach of Fiduciary Duty

### Against Dentists Buckhead and Paige

91. Plaintiff Arora realleges preceding paragraphs and incorporates herein by reference

each and every foregoing paragraph of this Complaint as if set forth in full.

92. Dentists knew or should have known that they were installing a lower quality crown

while neglecting and representing to Plaintiff that they were installing a higher quality

crown.

93. Further while invoicing Plaintiff for a higher quality crown and services, Dentists all

along knew or should have known that they had installed a lower quality crown in

Plaintiff and were negligent in invoicing for a higher quality crown.

94. Buckhead and Paige (Dentists), as health care providers, had a fiduciary duty to

Plaintiff, Dentists' patient, to act in the interest of the Plaintiff's well-being.

95. Dentists breached their fiduciary duty to Plaintiff.

96. Plaintiff has been proximately damaged by Dentists' breach.

97. Dentists' conduct was intentional, willful, wanton, and malicious. Dentists' had actual

knowledge of the wrongfulness of the conduct and the high probability that injury to

the Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

98. Dentists' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Plaintiff.

99. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Buckhead and Paige for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory damages (including general and special damages), punitive damages and reimbursement for negative tax consequences resulting from a jury verdict in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems equitable, just and proper.

## COUNT V

### Negligence

### Against Dentists Buckhead and Paige

100.   Plaintiff Arora realleges preceding paragraphs and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

101.   Dentists knew or should have known that they were installing a lower quality crown while neglecting and representing to Plaintiff that they were installing a higher quality crown.

102.   Further while invoicing Plaintiff for a higher quality crown and services, Dentists all along knew or should have known that they had installed a lower quality crown in Plaintiff and were negligent in invoicing for a higher quality crown.

103.   Buckhead and Paige (Dentists) owed a duty to Plaintiff to provide due care for the complete duration of the provider-patient relationship.

104.   Dentists owed a duty to Plaintiff to use and exercise reasonable and due care in evaluating, diagnosing, communicating with, and providing services to Plaintiff.

105.   Dentists owed a duty to the Plaintiff to provide a quality of care consistent with professional standards and requirements that any competent dentist, under the same circumstances, would have provided.

106.   Dentists owed a duty of care to the Plaintiff because Plaintiff was a foreseeable and probable victim of any and all inadequate services proffered. Dentists collected and received key health and personal information but did not deliver honest and accurate evaluations and diagnoses of Plaintiff's concerns and experiences. Dentists knew they inadequately processed this information and deliberately failed to warn Plaintiff of known risks. Furthermore, Dentists proceeded to improperly treat the Plaintiff. Dentists knew that such negligence would inflict considerable injury upon the Plaintiff, and yet Dentists were charged with a duty to ensure due care.

107.   Dentists maintained a special relationship with the Plaintiff. The Plaintiff entrusted Dentists with his health on the assumption that Dentists would provide due care, and Dentists were in a position to protect against the harm suffered by the Plaintiff as a result of this special relationship.

108. In light of their special relationship with the Plaintiff, Dentists knew, or should have known, of the risks inherent in providing treatment to Plaintiff and the importance of coordinating and communicating effectively with Suppliers to ensure correctness of materials and products used in the service of Plaintiff.

109. Dentists breached the duties they owed to the Plaintiff by failing to exercise reasonable care and to provide ethical treatment to protect the physical, mental, and emotional health of the Plaintiff.

110. Dentists breached the duties they owed to the Plaintiff by failing to properly perform sufficient due diligence that could have significantly reduced the length of the Plaintiff's anguish.

111. Dentists breached the duties they owed to the Plaintiff by failing to properly maintain the Plaintiff's health, whose decline was solely the result of Dentists' wanton neglect. Given Dentists' willful disregard to Plaintiff's just concerns, Dentists' breach of their duties was entirely unreasonable.

112. As a direct and proximate result of Dentists' negligent conduct, the Plaintiff has suffered injury and is entitled to damages in an amount to be proven at trial.

113. Dentists' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the safety and rights of the Plaintiff.

114. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Buckhead and Paige for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory damages (including general and special damages), punitive damages

and reimbursement for negative tax consequences resulting from a jury verdict in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems equitable, just and proper.

## COUNT VI

## Breach of Fiduciary Duty

## Against CIGNA

115.   Plaintiff Arora realleges preceding paragraphs and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

116.   CIGNA, as a dental health care insurer, had a fiduciary duty to Plaintiff, the insured, to provide due care and to act in the interest of the Plaintiff's well-being.

117.   Thus Dentists and CIGNA knew or should have known that an inferior crown was fraudulently installed in Arora.

118.   Further CIGNA knew or should have known that Arora was (fraudulently) charged for a higher quality, more expensive crown by Dentists although a lower quality crown was installed.

119.   Further CIGNA neglected and failed to do additional due diligence on Dentists even after CIGNA became aware of said fraud and overbilling by Dentists. Further instead of disqualifying and removing Dentists from CIGNA's approved list of dentists CIGNA continued to include Dentists in CIGNA's vetted and approved network of dentists and kept recommending Dentists to Plaintiff.

120.   CIGNA breached its fiduciary duty to Plaintiff.

121.   Plaintiff has been proximately damaged by CIGNA's breach.

122.   CIGNA's conduct was intentional, willful, wanton, and malicious. CIGNA had actual knowledge of the wrongfulness of the conduct and the high probability that injury to the Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

123.   CIGNA's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Plaintiff.

124.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant CIGNA for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory damages (including general and special damages), punitive damages and reimbursement for negative tax consequences resulting from a jury verdict in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems equitable, just and proper.

## COUNT VII

### Negligent Misrepresentation

### Against CIGNA

125.   Plaintiff Arora realleges preceding paragraphs and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

126.   CIGNA was negligent in misrepresenting that Dentists were included in CIGNA's vetted, approved and recommended list of dentists because they were qualified, honest and ethical. Plaintiff reasonably relied on said misrepresentations

127.   CIGNA knew or should have known that an inferior crown was fraudulently installed in Arora.

128.   Further CIGNA knew or should have known that Plaintiff was (fraudulently) charged for a higher quality, more expensive crown by Dentists although a lower quality crown was installed.

129.   Further CIGNA neglected and failed to do additional due diligence on Dentists even after CIGNA became aware of said fraud and overbilling by Dentists. Further instead of disqualifying and removing Dentists from CIGNA's approved list of dentists, CIGNA continued its negligent misrepresentation by including Dentists in CIGNA's vetted and approved network of Dentists and kept recommending Dentists to Plaintiff.

130.   CIGNA made misrepresentations and omissions concerning material facts.

131.   At the time of the misrepresentations and omissions, CIGNA knew them to be false, made them without knowledge of the truth or falsity, or should have known them to be false.

132.   CIGNA intended that the misrepresentations and omissions would induce Plaintiff to rely on them.

133.   Plaintiff justifiably relied on CIGNA's misrepresentations and omissions to his injury.

134.    CIGNA's conduct was intentional, willful, wanton, and malicious. CIGNA had actual knowledge of the wrongfulness of the conduct and the high probability that injury to Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

135.    CIGNA's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Plaintiff.

136.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant CIGNA for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory damages (including general and special damages), punitive damages and reimbursement for negative tax consequences resulting from a jury verdict in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems equitable, just and proper.

## COUNT VIII

### Fraud

### Against Global and Abraham

137.    Plaintiff Arora realleges preceding paragraphs and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

138.    According to Dentists, Global Defendants (fraudulently) manufactured and delivered a lower quality crown instead of the higher quality crown explicitly prescribed

and requested by Dentists. Dentist's said prescription request is also reflected in the Dentists' billing invoice to Plaintiff.

139.   As stated herein, in Dentists' said letter of June 13, 2016, Dentists clearly allege that Global Defendants were directly responsible for said (fraudulent) substitution.

140.   Further as state herein the documents produced by Dentists in response to Plaintiff's HIPAA request also support Dentists' allegations against Global Defendants as to said fraudulent substitution.

141.   Global and Abraham knowingly made false statements and omissions concerning material facts to Dentists as to said lower quality crown.

142.   In turn Dentists (mis-)represented to Plaintiff as to the quality of said crown.

143.   Global and Abraham intended that the false statements and omissions would induce Dentists (and Plaintiff) to rely on them.

144.   Plaintiff via Buckhead and Paige reasonably relied on Global's said false statements and omissions which caused him his injury.

145.   Global and Abraham intended to deceive. Their conduct was intentional, willful, wanton, and malicious. Global and Abraham had actual knowledge of the wrongfulness of the conduct and the high probability that injury to Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

146.   Global and Abraham's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights Plaintiff

147.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Global and Abraham for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory damages (including general and special damages), punitive damages and reimbursement for negative tax consequences resulting from a jury verdict in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems equitable, just and proper.

## COUNT IX

### Unjust Enrichment

### Against Global and Abraham

148.   Plaintiff Arora realleges preceding paragraphs and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

149.   Plaintiff conferred monetary benefits on Dentists by paying for the higher quality crown although Plaintiff was unaware that he actually received a lower quality crown. In turn Dentists conferred monetary benefits on Global and Abraham for a higher quality of crown.  According to Dentists, Dentists were unaware that they had actually received a lower quality of crown from Global Defendants who, then as Plaintiff alleges, accepted and retained said benefits. It was unjust for Global Defendants not provide the value of said benefit to Plaintiff (and Dentists).

150.   Global and Abraham voluntarily accepted and retained the benefits conferred in exchange for a dental restoration provided by Global to Plaintiff via Dentists.

151.   The circumstances are such that it would be inequitable for Global and Abraham to retain the benefits without providing the value thereof to Plaintiff. Plaintiff alleges he did not receive the stated dental restoration in response for the payments and benefits conferred onto Dentists (and Global defendants)

152.   Global and Abraham's conduct was intentional, willful, wanton, and malicious. Global and Abraham had actual knowledge of the wrongfulness of the conduct and the high probability that injury to the Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

153.   Global and Abraham's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Plaintiff.

154.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Global and Abraham for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory damages (including general and special damages), punitive damages and reimbursement for negative tax consequences resulting from a jury verdict in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems equitable, just and proper

## COUNT X

### Conspiracy

### Against CIGNA, Paige and Buckhead

155.    Plaintiff Arora realleges preceding paragraphs and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

156.    As stated herein Defendants CIGNA and Dentists both had fiduciary duty to provide due care to Plaintiff.

157.    Further  even though said Defendants  knew or should have known that Plaintiff had received a lower quality crown instead of a promised higher quality crown said Defendants conspired with each other to conceal said fraudulent substitution of low quality crown from Plaintiff and continued to do so.

158.    Said Defendants said conduct was intentional, willful, wanton, and malicious. Further they had actual knowledge of the wrongfulness of the conduct and the high probability that injury to the Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

159.    Said Defendants conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Plaintiff.

160.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants CIGNA, Buckhead and Paige for pain and suffering damages, damages for mental anguish, damages due to delayed earnings, pecuniary, actual, compensatory damages (including general and special damages), punitive damages and reimbursement for negative tax consequences resulting from a jury verdict in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems equitable, just and proper.

## DEMAND FOR JURY TRIAL

131.    Plaintiff hereby requests a jury trial on all issues raised in this complaint.


Dated: December 26, 2016


By: Dr. Sanjay K. Arora, Plaintiff

In Pro Per

# CERTIFICATE OF SERVICE

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**Arora vs Buckhead and Others (Case: 1:16-cv-01806)**

I hereby certify that on December 27, 2016, Plaintiff's 1st Amended Complaint and this Certificate of Service were served on counsel on record for Defendants Global Dental Solutions, LLC and Abramson; and on other remaining Defendants, by first-class mail, by mailing to all by depositing the same in the United States mail, with proper postage prepaid and affixed thereon.

_Sanjay K. Aron_

Sanjay Arora

1829 California St. NW, Unit 202

Washington, DC 20009

(248) 730 1920

December 27, 2016