**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DR. SANJAY ARORA,<br><br>                    *Plaintiff*,<br><br>         v.<br><br>BUCKHEAD FAMILY DENTISTRY, INC.,<br>*et al.*,<br><br>                    *Defendants*. | Civil Action No. 16-1806 (RDM) |

**MEMORANDUM OPINION**

Proceeding *pro so*, Plaintiff Sanjay Arora brings this diversity action against his dentist, the manufacturer of an allegedly defective dental crown, and his dental insurer.[1]  Each of the defendants has moved to dismiss, Dkts. 7, 11, and 19, and Arora has moved for an extension of time to effect service, Dkt. 14, for leave to file a second amended complaint, Dkt. 30, and to amend the civil cover sheet, Dkt. 13.  For the reasons discussed below, the Court concludes (1) that it lacks personal jurisdiction over Arora's dentist and the manufacturer of the dental crown and that Arora has yet to establish that he has properly served his insurer; (2) that Arora should

---

[1]  Although Arora's first amended complaint alleges that he is a resident of the District of Columbia and that one of the defendants, Cigna Health and Life Insurance Co., "is located" in the District of Columbia, Dkt. 6 at 3, his proposed second amended complaint clarifies that Cigna's "corporate office" is located in Philadelphia, Pennsylvania, and that Cigna merely maintains a "local office" in the District of Columbia, Dkt. 30-1 at 5.  Construing Arora's first amended complaint liberally, as required when considering *pro se* pleadings, the Court therefore concludes that Arora merely alleged that Cigna maintains an office in the District and not that its "principal place of business" is located in the District, which would defeat diversity.  *See* 28 U.S.C. § 1332(a)(1) & (c)(1); *CostCommand, LLC v. WH Adm'rs, Inc.*, 820 F.3d 19, 21 (D.C. Cir. 2016).  Cigna's representation that its "corporate office" is located in Philadelphia, Dkt. 19 at 6, moreover, is sufficient to satisfy the Court's independent duty to ensure that it has subject matter jurisdiction.  *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008).

be granted an extension of time to effect service of process on his insurer; (3) that Arora's motion for leave to amend should be denied without prejudice; and (4) that there is no basis (or need) to permit Arora to amend his civil docket sheet.  Finally, the Court will issue an order directing that the parties show cause why this action should not be transferred to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. 1406(a) and/or 28 U.S.C. § 1631.

## I.  BACKGROUND

For purposes of considering the pending motions to dismiss and Arora's related motion for leave to amend, the Court will assume that the facts alleged in Arora's first amended complaint and proposed second amended complaint are true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (factual allegations must be taken as true for purposes of a motion to dismiss); *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").  Moreover, because Arora is proceeding *pro se*, the Court must construe his pleadings liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (citation omitted).  With these principles in mind, the relevant facts are as follows:

While he was living in Atlanta, Georgia, in late 2013, Arora sought treatment for a cracked tooth from Dr. Travis Paige of Buckhead Family Dentistry ("Buckhead").  Dkt. 6 at 4. Paige first installed a temporary crown and then, on February 25, 2014, installed a permanent crown.  *Id.* at 5.  The permanent crown, which was manufactured by Global Dental Solutions LLC ("Global"), was supposed to be made of a "high-noble metal" such as gold, platinum, or

palladium.  *Id.* at 7, 9.  As Arora eventually discovered, however, the permanent crown was made primarily of nickel, a potential irritant.  *Id.* at 7, 9.  Within days of the crown's installation, Arora experienced severe discomfort and pain in the area surrounding the affected tooth.  *Id.* at 5–6.  Front-office staff at Buckhead assured Arora that his reaction to the crown was normal, and Paige subsequently tried filing the crown down to mitigate the irritation.  *Id.* at 6.  Arora ultimately switched dentists and had the crown removed and replaced with a non-metal alternative in September 2014.  *Id.* at 8.  At all relevant times, Cigna Health and Life Insurance Company ("Cigna") was Arora's dental insurance provider.  *Id.* at 4.  Arora requested copies of all files relating to the installation of the permanent crown, at which point he discovered that Global had invoiced Buckhead for a "Non Precious [metal]" crown with a primarily nickel and chromium interior.  *Id.* at 8–9; Dkt. 30-1 at 54.

Arora subsequently moved to the Washington, D.C. area, and lived at various addresses in Maryland, Virginia, and the District of Columbia starting in August 2014.  Dkt. 16 at 23 (Arora Aff. ¶¶ 7-8).  He brought this lawsuit in September 2016 against Buckhead, Paige, Global, Brad Abramson (who serves as Global's president), and Cigna.  Dkt. 1 at 1.  Shortly after Global and Abramson moved to dismiss, Arora amended his complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1).  Dkt. 6.  The amended complaint contains ten counts: (1) fraud against Buckhead and Paige; (2) negligent misrepresentation against Buckhead and Paige; (3) unjust enrichment against Buckhead and Paige; (4) breach of fiduciary duty against Buckhead and Paige; (5) negligence against Buckhead and Paige; (6) breach of fiduciary duty against Cigna; (7) negligent misrepresentation against Cigna; (8) fraud against Global and Abraham; (9) unjust enrichment against Global and Abraham; and (10) conspiracy against Cigna, Paige and Buckhead.  *Id.* at 11–27.  In response, Global and Abramson renewed their

motion to dismiss, Dkt. 7, and Buckhead, Paige, Dkt. 11, and Cigna, Dkts. 18, 19, moved to dismiss.  After briefing was completed on those motions, Arora moved for leave to file a second amended complaint.  Dkt. 30.  He has also moved to extend the time for service of process, Dkt. 14, and to amend the civil cover sheet, Dkt. 13.

## II.  ANALYSIS

### A.    Personal Jurisdiction Under the D.C. Long-Arm Statute

Global, Abraham, Buckhead, and Paige all move to dismiss on the ground that this Court lacks personal jurisdiction over them under the D.C. long-arm statute and the U.S. Constitution. Dkt. 7 at 1; Dkt. 11 at 1.  Because the Court concludes that Arora has not alleged (or otherwise proffered) facts that would, if true, establish personal jurisdiction over these defendants under the D.C. long-arm statute, it need not reach the constitutional question.  *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

As the party asserting federal jurisdiction, Arora bears the burden of "mak[ing] a *prima facie* showing of the pertinent jurisdictional facts."  *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  "A court may dismiss the complaint if it fails facially to plead facts sufficient to establish that the Court has jurisdiction, but 'where necessary, the [C]ourt may [also] consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts.'" *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 173 (D.D.C 2016) (quoting *Herbert v. Nat'l Acad. Of Scis*., 974 F.2d 192, 197 (D.C. Cir. 1992)).  For the reasons explained below, the Court can resolve the pending Rule 12(b)(2) motion based on the facts as Arora alleges them, and without resolving any disputed issues of fact.

As relevant here, the D.C. long-arm statute provides that "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim

4

for relief arising from the person's . . . *causing tortious injury in the District of Columbia* by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered in the District of Columbia." D.C. Code § 13-423(a)(4) (emphasis added). Thus, where a party seeks to recover in the District of Columbia for a tortious act or omission that occurred in another jurisdiction, as Arora seeks to do here, that party bears the burden of alleging and ultimately demonstrating (1) that the allegedly wrongful act or omission caused a "tortious injury in the District of Columbia" and (2) that the defendant has established significant ties to the District of Columbia by, for example, engaging in some "persistent course of conduct" in the jurisdiction. *See Forras v. Rauf*, 812 F.3d 1102, 1107–08 (D.C. Cir. 2016); *Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 761 (D.C. 2009). Although it is far from clear that any of the defendants who have moved to dismiss under Rule 12(b)(2) have significant ties to the District of Columbia, *see* Dkts. 7, 11, the Court need not resolve that question because Arora's efforts to invoke § 13-423(a)(4) founder at the first step—he has failed to allege, or otherwise to identify, any "tortious injury" that he sustained in the District of Columbia.

Arora's alleged injury is the damage to his gums caused by the installation of a low-quality crown. That injury took place in Georgia. The only harm Arora alleges that he suffered in the District of Columbia is that he "continue[s] to experience minor to moderate pain associated with" the affected tooth. Dkt. 16 at 23 (Arora Aff. ¶ 7). By the time he moved to the District of Columbia, he was no longer a patient of Buckhead or Paige, he had no relationship with Global or Abramson, and he was no longer insured by Cigna. Dkt. 6 at 8. The fact that he continued to suffer "minor to moderate pain" as a result of the injury that he sustained in Georgia

5

does not qualify as a separate injury occurring in the District of Columbia for purposes of the D.C. long-arm statute.

In relevant respects, this case is on all fours with this Court's decision in *Leaks v. Ex-Lax, Inc*., 424 F. Supp. 413 (D.D.C. 1976). In that case, the plaintiff had an adverse reaction to two Ex-Lax pills that she consumed while in Phoenix, Arizona, in March 1974. *Id.* at 415. She was treated in Phoenix and did not return home to the District of Columbia until May 1974. *Id.* She alleged, however, that she continued to suffer "extreme physical and mental injury" and substantial financial losses after returning to the District of Columbia, and that, as a result, at least a portion of her "injury" was caused in the District within the meaning of § 13-423(a)(4). *Id.* The Court disagreed, holding that the plaintiff's position was not supported by either "the plain meaning of" the statute or "the pertinent legal authorities." *Id.* As the Court explained: "To allege that plaintiff's continuing pain shifts the site of the injury to this [d]istrict would also mean that any jurisdiction to which plaintiff has travelled since she consumed the pills and which has a similar long-arm provision would be an appropriate forum for [the] lawsuit, for the continuing pain (the 'injury' under plaintiff's reasoning) would have been felt in any such potential forum." *Id.* Plaintiff's theory, in short, was at odds with the ordinary meaning of the phrase "causing an injury in the District of Columbia" and, in addition, it proved too much.

Almost 25 years after *Leaks* was decided, the Court of Appeals for the District of Columbia endorsed this reasoning, embraced the distinction between "original injury" and "secondary injury," and held that "'second injury' which follows [a] plaintiff wherever she travels cannot form the basis for personal jurisdiction over [an out-of-state] defendant." *Etchebarne-Bourdin v. Radice*, 754 A.2d 322, 328 (D.C. 2000); *see also Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 761 n.8 (D.C. 2009). Citing *Leaks*, the D.C. Court of Appeals held that it

6

is "'the original physical injury' [that] is paramount in determining where the tortious injury has been caused." 754 A.2d at 327. Under that now-settled principle of D.C. law, it is clear that Arora's alleged tortious injury occurred in Georgia, where the defective crown was installed, and not in Florida, Michigan, Germany, Tennessee, Virginia, Maryland, or the District of Columbia—all places where Arora traveled after sustaining his injury and while still experiencing pain. Dkt. 16 at 23 (Arora Aff. ¶¶ 7–8).

Arora argues that personal jurisdiction over Buckhead is proper because he received several marketing emails from Buckhead while living in the District of Columbia. Dkt. 16 at 10. Those emails, however, had nothing to do with the tortious conduct alleged in this action and thus cannot satisfy the "transacting any business" or "contracting to supply services" prongs of the D.C. long-arm statute, which require that the "claim for relief aris[e] from" that activity. *See* D.C. Code § 13-423(a)(1) & (2), (b). Because the emails did not themselves cause any injury in the District of Columbia, moreover, they also cannot satisfy the "injury" requirement of the "tortious injury" prongs of the long-arm-statute. *See id.* § 13-423(a)(3) & (4).

Arora also cites several personal jurisdiction cases in which courts upheld the exercise of personal jurisdiction over defendants who directed communications, including emails, into the forum state. *See* Dkt. 16 at 11–12. But those cases involved either the constitutional issue of the minimum contacts necessary to satisfy due process, or long-arm statutes more expansive than the District of Columbia's, or specific factual allegations connecting the defendants to the forum state that are not present here (or all three).[2] They do not address the question that is dispositive

---

[2] *See Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012) (involving long-arm statute authorizing personal jurisdiction to the fullest extent permitted by due process); *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001) (same); *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (same); *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (same); *Wien Air*

here: whether the D.C. long-arm statute confers personal jurisdiction over those who engage in medical malpractice or other tortious conduct outside of the District of Columbia, which does not cause an "original injury" in the District.

The Court, accordingly, concludes that D.C. the long-arm statute does not authorize personal jurisdiction over Global, Abramson, Buckhead, or Paige.

Arora requests that, if the Court concludes that it lacks personal jurisdiction over Global, Abramson, Buckhead and Paige, it transfer the action to "the Federal Court in Maryland or Virginia" pursuant to 28 U.S.C. § 1404(a). Dkt. 15 at 18; Dkt. 16 at 19. That request is meritless because there is no reason to believe that a federal district court in Maryland or Virginia would provide a more "convenien[t]" forum for any party to this action, and, more importantly, because there is no reason to believe that a federal district court in Maryland or Virginia would have personal jurisdiction or venue over Arora's claims against Global, Abramson, Buckhead, and Paige.

It does appear, however, that the United States District Court for the Northern District of Georgia might possess both personal jurisdiction and venue over Arora's claims against Global, Abramson, Buckhead, and Paige. Arora's first amended complaint alleges that each of these defendants is located in Atlanta, Georgia. Dkt. 6 at 3. Abramson, moreover, confirms that he is a resident of Atlanta and that Global is a limited liability company "doing business in Atlanta,"

---

*Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999) (same); *Vishay Intertechnology Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982) (same); *Matassarin v. Grosvenor*, No. 14-50148, 2014 U.S. App. LEXIS 21330, at *18 (5th Cir. Nov. 7, 2014) (same); *Schneider v. Hardesty*, 669 F.3d 693, 700–01 (6th Cir. 2012) (concluding that defendant specifically knew that fraudulent communications reached plaintiff in Ohio); *MacDermid v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (defendant misappropriated files from server she knew to be located in Connecticut); *Deutsche Bank Sec., Inc.v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (N.Y. 2006) (sophisticated institutional investor knowingly initiated business transaction in New York).

Dkt. 8-1 at 1 (Abramson Aff. ¶¶ 1, 2), and Paige confirms that he is also a resident of Atlanta and that Buckhead is "located" in Atlanta, Dkt. 11-2 at 1 (Paige Aff. ¶¶ 2, 3).  In addition, most, if not all, of the alleged events relevant to Arora's claims occurred in Atlanta.

Two potential mechanism exist for transferring this case to that court.  *See generally Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 281–86 (D.D.C. 2015).  First, 28 U.S.C. § 1406(a) provides that a district court may, "in the interest of justice, transfer [a] case [brought in the wrong venue] to any district or division in which it could have been brought."  And, second, 28 U.S.C. § 1631 provides that, if a "court finds that there is a want of jurisdiction" over a matter, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed."  As the D.C. Circuit has stressed, § 1631 is mandatory—that is, "where a court finds that it lacks jurisdiction, it *must* transfer such action to the proper court, if such transfer is in the interest of justice."  *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985) (emphasis added); *see also Hill v. U.S. Air Force*, 795 F.2d 1067, 1071 (D.C. Cir. 1986) (quoting same); *Ctr. for Nuclear Responsibility v. U.S. Nuclear Reg. Comm'n*, 781 F.2d 935, 943 (D.C. Cir. 1986) (Ginsburg, J., dissenting) (where a federal court finds that it lacks jurisdiction, it "*must* transfer that case to the proper court") (emphasis added).  Significantly, § 1631 does not only apply in cases in which the Court lacks subject matter jurisdiction, but also in cases in which the Court lacks personal jurisdiction.  *See Hill*, 795 F.2d at 1068–70; *Freedman*, 139 F. Supp. 3d at 285–86.

Although the D.C. Circuit has at least suggested that a district court may transfer an action pursuant to 28 U.S.C. § 1631 *sua sponte*, *see Hill*, 795 F.2d at 1070, the Court will provide the parties with an opportunity to address the applicability of §§ 1406(a) and 1631, and, in particular, whether the ends of justice would be served by transferring the case to the Northern

District of Georgia, before deciding whether it should transfer the case or simply dismiss Arora's claims against Global, Abramson, Buckhead and Paige for lack of personal jurisdiction.

**B.**     **Cigna's Motion to Dismiss and Arora's Motion to Extend the Time for Service**

Cigna takes a different tack than the other defendants and moves to dismiss for insufficient service of process under Rule 12(b)(5) and to dismiss for failure to state a claim under Rule 12(b)(6). Dkt. 18 at 1. For the reasons explained below, the Court concludes that Arora has failed to carry his burden of showing that he has properly effected service of process in the manner prescribed Rule 4(h). Because Arora, accordingly, has yet to establish that the Court possesses personal jurisdiction over Cigna, it follows that the Court cannot consider Cigna's alternative motion to dismiss for failure to state a claim. The Court will, however, in an exercise of its discretion, afford Arora forty-five additional days to effect service. If Arora fails to submit adequate proof of service within the next forty-five days, the Court will dismiss the action against Cigna without prejudice pursuant to Rule 4(m).

1.     *Motion to Dismiss*

Arora filed his complaint on September 9, 2016, and under Rule 4(m) had ninety days, or until December 8, 2016, to effect service. On December 21, 2016, having not received any proof of service, the Court issued an order directing that, by January 6, 2017, Arora submit proof of service or show cause why the case should not be dismissed. Minute Order, Dec. 21, 2016. On January 4, 2017, Arora submitted evidence that the summons and complaint were sent by certified mail, return receipt requested to "Registered Agent, Cigna Health and Life Insurance Company, 1015 15th Street, N.W., Suite 1000, Washington, DC 20005." Dkt. 10 at 11–13. The proof of service was signed by "Surrinder Arora" and stated that the summons was mailed on

December 7, 2016."[3]  *Id.* at 12.  The attached return receipt was signed by "C. Wright" on December 8, 2016.  *Id.* at 13.

In a motion also dated January 4, 2017, and filed on January 6, 2017, Arora asks that the Court extend his time to effect service by forty-five days, as permitted upon a showing of "good cause" by Rule 4(m).  Dkt. 14.  In that motion, Arora explains that Cigna's "[r]egistered agent," CT Corporation, responded to his December 7, 2016, effort to effect service with a letter (dated December 9, 2016) indicating that "Cigna Health and Life Insurance Company is not listed on our records or on the records of the State of DC."  Dkt. 14 at 3–4; *see also* Dkt. 19-1 at 3.  That letter further stated that "CT was unable to forward" the summons and complaint to Cigna.  Dkt. 19-1 at 3.  According to Arora, "[u]pon receiving this letter from CT," his agent then, on December 23, 2016, mailed the complaint by certified mail, return receipt requested to two additional addresses:  "Cigna Incoming Legal Department B6LPA, 900 Cottage Grove Rd., Hartford, CT 06152," and "Cigna Corporate Office, 1601 Chestnut St., Philadelphia, PA 19192."  Dkt. 14 at 4.  Although he had not received the return receipts "[a]s of January 2, 2016," Arora has submitted the Postal Service "on-line tracking" reports, showing that both packages were delivered on December 28, 2016.  *Id.* at 4, 21-22.

Arora asserts in his motion for an extension that he "believes that all" of the defendants have been properly served, but he also recognizes the limits of his knowledge of the law.  *Id.* at 8.  He, accordingly, asks for the forty-five day extension "as a precaution" and further asks that the Court identify any defendant that had not been properly served.  *Id.*  As Arora explains, he is

---

[3]  Arora asserts that he made earlier efforts to serve by personally mailing the summons and complaint to what he believed was the proper recipient, but subsequently recognized that Rule 4(c)(2) does not allow a party personally to effect service.  *See* Dkt. 14 at 6; Dkt. 24 at 12–13.

particularly concerned that dismissal of his action could cause him substantial prejudice because "the statute of limitations may have run . . . on some of [his] claims." *Id*. at 7.

Approximately a month after Arora moved for an extension of time to serve his complaint, Cigna moved to dismiss on, among other grounds, insufficient service of process. Dkts. 18, 19. Cigna makes two arguments. First, it argues that Arora's efforts to achieve service by mailing the summons and complaint to CT Corporation was ineffective, because CT Corporation is not the registered agent of Cigna Health and Life Insurance Company. Second, it argues that Arora's efforts to serve Cigna at its legal and corporate offices in Hartford and Philadelphia came too late and "still failed" to comply with the requirements of Rule 4(h). Dkt. 19 at 6–10. As explained below, the Court agrees with Cigna's first contention, disagrees that Arora's efforts to serve Cigna in Hartford and Philadelphia came too late, but agrees that Arora has yet to demonstrate that he has properly served Cigna.

Arora's first attempts to serve Cigna were directed at what he believed was its registered agent in the District of Columbia, CT Corporation. Dkt. 10 at 13; Dkt. 24 at 13. As the D.C. Department of Consumer and Regulatory Affairs website shows, CT Corporation is the D.C. registered agent for "Cigna Healthcare Inc." Dkt. 24 at 49. The Cigna defendant in this case, however, is "Cigna Health and Life Insurance Company." Dkt. 6 at 1. Cigna represents that those are distinct entities. Dkt. 25 at 8. Arora does not dispute that representation and, instead, argues that CT Corporation nonetheless "acted . . . as Cigna's authorized agent when it . . . accepted the restricted delivery of the summons and complaint." Dkt. 24 at 14.

Because there is no evidence that CT Corporation is Cigna's actual agent—and, indeed, the evidence before the Court indicates that it is not—Arora's argument depends on a theory of apparent agency. *See Makins v. District of Columbia*, 861 A.2d 590, 594 (D.C. 2004). But, even

if the doctrine of apparent authority extends to Rules 4(e) and (h) and to Superior Court Civil Rule 4(h)—a proposition that is far from certain—Arora's argument fails to two reasons.  First, the undisputed evidence contradicts the premise that CT Corporation even *apparently* accepted delivery of the summons and complaint on behalf of Cigna.  Although it appears that someone at CT Corporation signed for delivery of the mailings, the company immediately notified Arora that Cigna Health and Life Insurance Company was not "listed" in its "records" and that it could not forward the summons and complaint to Cigna.  Dkt. 19-1 at 2 (letter from CT Corporation dated December 5, 2016, responding to package from Arora received in December 3, 2016); Dkt. 19-1 at 3 (letter for CT Corporation dated December 9, 2016, responding to package from Arora's agent received on December 8, 2016); *see also* Dkt. 14 at 3, 6.  Second, even had CT Corporation manifested apparent authority to act on behalf of Cigna Health and Life Insurance Company, "apparent authority depends upon the principal's [i.e. Cigna's] manifestations to the third party [i.e. Arora]."  *Makins*, 861 A.2d at 594.  The apparent agent's conduct, in other words, is not sufficient to bind the apparent principal.  The Court, accordingly, concludes that Arora's efforts to effect service on Cigna through CT Corporation were unsuccessful.

This, then, leaves the question whether Arora properly served Cigna when his agent sent the complaint and summons by certified mail, return receipt requested to Cigna's "Incoming Legal Department" and "Corporate Office" in Hartford and Philadelphia on December 23, 2016. Cigna raises two arguments why these mailings also fail to meet the requirements of Rule 4.  It first argues that Arora waited too long before making these mailings and has failed to demonstrate "good cause" for failing to effect service within the 90-day period prescribed by Rule 4(m).  Dkt. 19 at 8.  And, second, it argues—in considerably vaguer terms—that, even if timely, Arora "has still failed to properly serve Cigna."  *Id.* at 8–9.

Although Cigna is correct that Arora's agent did not mail the summons and complaint to Cigna's "Incoming Legal Department" and "Corporate Office" until after the 90-day period had expired, the Court is unconvinced that this lapse, standing alone, would merit dismissal of the action. Rule 4(m) mandates that a district court "must extend" the 90-day period "if the plaintiff shows good cause for the failure" to timely serve. Fed. R. Civ. P. 4(m). "Good cause exists 'when some outside factor . . . rather than inadvertence or negligence, prevented service.'" *Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012) (quoting *Lepone-Dempsey v. Carroll Cnty. Com'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007)). Even in the absence of "good cause," however, Rule 4(m) does not require that the district court dismiss the action; rather, the Court must either "dismiss the action without prejudice against the defendant *or* order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added). As "[t]he Advisory Committee note for Rule 4(m)" explains, "the district court has discretion to extend the time for effecting and filing proof of service even if the plaintiff fails to show 'good cause.'" *Mann*, 681 F.3d at 375 (citing Fed. R. Civ. P. 4, Advisory Committee Note to 1993 Amendments, Subdiv. (m)).

It is unsettled in this Circuit whether the "exercise of [this] discretion" is "cabined by Rule 6(b)(2)'s requirement that 'excusable neglect' be found, or by equitable factors." *Id.* at 376. But, even if "excusable neglect" is required, that is "a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (citation omitted). In deciding whether an omission is "excusable," the Court must consider a range of factors, including "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the

14

movant acted in good faith." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003).

Because the Court concludes that Arora's delay until December 23 to mail the summons and complaint to Cigna's "Incoming Legal Department" and "Corporate Office" was excusable, it need not decide whether the more demanding "good cause" standard is met or, for that matter, whether it might have discretion to extend Arora's time to effect service even in the absence of "excusable neglect."  Although Cigna asserts that "*Dr*. Sanjay Arora[] is not unsophisticated," Dkt. 19 at 9 (emphasis in original), there is no evidence that he has any legal training or experience; he is proceeding *pro se* and faces the same hurdles faced by any non-lawyer in satisfying the at-times arcane rules for effecting service.  Nor is there any reason to doubt that he has acted in good faith or with reasonable diligence; he has made at least three attempts to serve Cigna (two of which occurred before the ninety-day period expired), and it is not difficult to fathom how he confused "Cigna Healthcare" and "Cigna Health and Life Insurance Company." This is not a case in which the plaintiff ignored his obligation to effect service within ninety days of filing the complaint; Arora tried to do so in a timely manner, and, when he failed, he made a further effort to do so within fifteen days of the close of the ninety-day period.  That brief delay has not had any effect on this proceeding or on Cigna's substantive or procedural rights.  Indeed, Cigna did not even file its motion to dismiss for another month and a half.  *See* Dkt. 18.

There is thus ample basis to conclude that Arora acted in good faith and that Cigna would not be unfairly prejudiced by extending Arora's time to serve.  Arora further argues that he might be prejudiced if the Court were to dismiss the complaint because his claims "will become time barred."  Dkt. 24 at 20.  Cigna responds by noting that Arora "does not specify which [of his claims] will be time barred" or "whether the time bar would apply to claims

brought against Cigna." Dkt. 25 at 11.  That is a fair point; to the extent Arora seeks to recover under Georgia law for "fraud or negligent misrepresentation," for example, those claims would likely be subject to a four-year statute of limitations, *see MBIGI v. Wells Fargo Home Mortg.* 785 S.E.2d 8, 18 (Ga. App. 2016), thus permitting Arora to refile if the complaint were dismissed without prejudice.  But neither the Court nor Arora is currently in a position to conclude with any confidence that Arora's claims against Cigna, if any, would be governed by Georgia law or the four-year statute of limitations.  It is safe to assume, moreover, that the potentially relevant statutes of limitations in other jurisdictions are both varied and, at times, less than three years, *see, e.g.*, 42 Pa. Cons. Stat. § 5524(7) (two year statute of limitations for negligent misrepresentation in Pennsylvania), which might impose a bar to refiling.  As a result, although the Court cannot conclude that Arora would clearly be prejudiced if the complaint were dismissed, it also cannot foreclose that possibility at this early stage of the litigation. Considering all of these factors together, the Court concludes that the delay between December 8, 2016, when the ninety-day period expired and December 23, 2016, when Arora's agent mailed the complaint and summons to Cigna's legal and corporate offices was excusable.

Had Cigna's Rule 12(b)(5) motion ended with this, the Court would have simply denied the motion.  Cigna goes on, however, to (just barely) raise a second ground for invoking Rule 12(b)(5), and this ground is dispositive for present purposes.  In its opening brief, Cigna merely asserts that Arora "has still failed to properly serve Cigna with the . . . complaint." Dkt. 19 at 9. In its reply brief, Cigna explains what it means by this:  "Plaintiff has not identified who received the summons and complaint, nor has he provided any other indication that this method of service was proper," and "Plaintiff has failed to show that [the complaint and summons were] properly served on anyone authorized to receive service." Dkt. 25 at 9–10.

16

Although Cigna can be faulted for having failed more clearly to raise this argument in its opening brief, it did (just barely) preserve the defense that Arora's failure was not merely one of timing, but also substance.  And, having put Arora on notice that it was challenging the efficacy of his December 23 attempt at service, Arora had "the burden to 'demonstrate that the procedure employed to deliver the papers satisfie[d] the requirements of the relevant portions of Rule 4.'" *Mann*, 681 F.3d at 372 (quoting 4A C. Wright & A. Miller, Federal Practice and Procedure § 1083 (3d ed. 2002 & Supp. 2012); *see also Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). Having cleared the bar of preserving the issue, Cigna is correct that Arora has failed to carry this burden.  Both Federal Rule of Civil Procedure 4(h) and Superior Court Civil Rule 4(h)—which is incorporated by operation of Federal Rule 4(h)(1)(A) and (e)(1)—require delivery of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B); Sup. Ct. Civ. R. 4(h)(1).  Arora, however, merely asserts that he effected service on "Cigna Incoming Legal Department" and "Cigna Corporate Office." Dkt. 14 at 4.  Without more, the Court cannot discern whether the summons and complaint were delivered to anyone meeting the requirements set forth in the governing rules and must, accordingly, conclude that Arora has yet to meet his burden of establishing effective service of process.  *See Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990) ("The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant.").

Finally, having concluded that Arora has yet to demonstrate that he has properly effected service on Cigna, the Court cannot reach Cigna's motion to dismiss for failure to state a claim. In *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 101–02 (1998), the Supreme Court admonished that, "[f]or a court to pronounce upon [the merits] when it has no jurisdiction to do

17

so is, by very definition, for a court to act *ultra vires*."  That rule was announced in the context of subject matter jurisdiction and has been applied most often in that context.  But it is also true that "federal courts lack the power to assert personal jurisdiction over a defendant 'unless the procedural requirements of effective service of process are satisfied'" or have been waived, *Mann*, 681 F.3d at 372 (quoting *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002)), and that "[p]ersonal jurisdiction," like subject matter jurisdiction, "is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication,'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Empl'rs Reinsurance Corp. v. Bryan*, 299 U.S. 374, 382 (1937)).  In light of these principles and the Court's conclusion that Arora has yet to meet his burden of establishing even a *prima facie* case of personal jurisdiction, the Court is "powerless" to consider Cigna's Rule 12(b)(6) motion on the merits.

> 2.     *Motion for Extension of Time to Serve*

The Court's conclusion that Arora has yet to meet this burden does not, however, dispose of the case because Arora has moved for an extension of time to effect service.  Dkt. 14.  That motion seeks an "additional 45 days (or any other period the Court deems appropriate) from the date the Court grants [the] motion" for extension of time.[4]  *Id.* at 9.  For largely the same reasons identified above, the Court concludes that it should exercise its discretion to extend Arora's time to effect serve for a period of forty-five days from today—that is, until August 10, 2017.   The only material difference between granting this extension, and the Court's earlier conclusion that

---

[4]  Although Arora's motion for an extension of time was filed after the ninety-day period ran, it was filed within the period of time the Court previously gave him either to submit proof of service or to show cause why the case should not be dismissed.  *See* Minute Order, Dec. 21, 2016.

Arora's failure to effect service before December 23, 2016, should be excused, is the fact that more time has now passed.  That additional time, however, does not alter the Court's conclusions that Arora has acted in good faith and with reasonable diligence; that Cigna will not be unfairly prejudiced by an order granting the extension; and that there is some risk that the Court's failure to grant the extension would bar Arora from pursuing his claims on the merits in light of uncertainly regarding the governing statute of limitations.

The Court will, accordingly, grant Arora's motion for an extension of time to effect service.  Should he fail to do so within the extended time, the Court will dismiss his claims against Cigna for failure to effect service of process.

**C.      Arora's Motion to Leave to Amend the Complaint**

Federal Rule of Civil Procedure 15(a) allows a plaintiff to amend his complaint once as a matter of course within twenty-one days after serving it, or within twenty-one days of service of a responsive pleading or a Rule 12 motion to dismiss, for a more definite statement, or to strike. Fed. R. Civ. P. 15(a)(1).  Any further amendment, however, is permitted "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Because Arora has already amended his complaint once, Dkt. 6, and because all defendants oppose granting him leave to amend, Dkts. 31, 32, 35, he may only amend again with the Court's leave.

The Court, of course, "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But "leave to amend should be denied when amendment would be futile," *Sai v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015), including, most notably, when "the proposed claim would not survive a motion to dismiss," *James Madison Ltd. by Hecht*, 82 F.3d at 1099.  Applying these principles, the Court concludes that Arora's motion to amend is either futile or premature.

To the extent Arora seeks leave to amend to address any of the defects in personal jurisdiction identified in Part A, above, the Court concludes that the effort is futile. Nothing contained in Arora's amended complaint established any plausible basis for asserting personal jurisdiction in the District of Columbia over Global, Abramson, Buckhead, or Paige. And, to the extent Arora seeks leave to amend to address any of the shortcomings identified in Cigna's Rule 12(b)(6) motion, the Court cannot evaluate that request without also considering whether Arora has adequately alleged a claim against Cigna for breach of fiduciary duty, negligent misrepresentation, or conspiracy. Having concluded that the Court is "powerless" to consider the merits of Cigna's Rule 12(b)(6) motion because Arora has yet to make even a *prima facie* showing of proper service—and thus personal jurisdiction—with respect to Cigna, the Court ought not now engage in essentially the same analysis under the guise of a motion for leave to amend.

The Court will, accordingly, deny Arora's motion for leave to amend without prejudice.

**D.     Arora's Motion to Amend the Civil Cover Sheet**

Finally, Arora moves to amend the civil cover sheet, stating the he inadvertently misclassified this case as "Medical Malpractice," when in fact it should be categorized as "Other Contracts." Dkt. 13 at 1–2. The categorization of this case for docketing purposes is of no substantive importance and, certainly, has had no bearing on the Court's conclusions that Global, Abramson, Buckhead, and Paige are not subject to personal jurisdiction in the District of Columbia, and that Arora has failed to meet his burden of showing that he properly served Cigna. Arora cites no authority in support of his request, and fails to explain why the request is necessary. Accordingly, the Court will deny this motion as unsupported and unnecessary.

**CONCLUSION**

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over Global, Abramson, Buckhead, and Paige; that Arora has yet to show that he has properly served Cigna; that Arora should be given an additional forty-five days to effect service on Cigna; that Arora's motion for leave to file a second amended complaint is futile in certain respects and is premature in other respects; and, finally, that Arora's request to amend the civil cover sheet is unsupported and unnecessary.

A separate order will issue.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  June 26, 2017