UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SANJAY ARORA,

        *Plaintiff*,

    v.

BUCKHEAD FAMILY DENTISTRY, INC.,
*et al.*,

        *Defendants*.

Civil Action No. 16-1806 (RDM)

---

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Cigna Health and Life Insurance Company's renewed motion to dismiss, Dkt. 33, and the Court's Order to Show Cause why this case should not be transferred to the U.S. District Court for the Northern District of Georgia, Dkt. 37.  For the reasons that follow, the Court will **GRANT** Cigna's motion to dismiss and will **ORDER** that the remainder of the action be transferred to the U.S. District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1631.

## I.  BACKGROUND

The Court recounted the facts giving rise to this dispute in its prior opinion, *see Arora v. Buckhead Family Dentistry, Inc.*, 263 F. Supp. 3d 121, 125–26 (D.D.C. 2017), and will, accordingly, only briefly outline the allegations relevant for present purposes.  In considering Cigna's motion to dismiss, the Court must accept the factual allegations set forth in the amended complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

While living in Atlanta, Georgia in 2013, Plaintiff Sanjay Arora sought treatment for a cracked tooth from Dr. Travis Paige of Buckhead Family Dentistry.  Dkt. 6 at 4–5 (Am. Compl.

¶ 15).  Dr. Paige installed a permanent crown, which was manufactured by Global Dental Solutions LLC.  *Id.* at 9 (Am. Compl. ¶ 48).  The procedure was covered by Cigna Health and Life Insurance Company, Arora's dental insurance provider at the time.  *Id.* at 4 (Am. Compl. ¶ 12).  Soon afterwards, Arora began to experience intense discomfort and pain in the area surrounding the crown.  *Id.* at 5–6 (Am. Compl. ¶¶ 22–24).  The crown, it turned out, was not the "high noble metal crown" for which Arora and Cigna paid.  *Id.* at 5, 7–8 (Am. Compl. ¶¶ 17, 36, 41).  Instead, according to the invoice Global sent Buckhead Family Dentistry, Arora received a non-noble crown of lower quality.  *Id.* at 8–9 (Am. Compl. ¶¶ 47–48).

Arora "demand[ed] a full refund" of his portion of the dentist's fee (presumably, his co-payment) from Cigna so that he could have the crown replaced.  *Id.* at 7 (Am. Compl. ¶ 39).  In a letter dated July 10, 2014, Cigna described the procedure at issue as receipt of a "high noble metal crown on tooth #30."  *Id.* at 8 (Am. Compl. ¶ 41).  In addressing Arora's complaints, Cigna stated that it "investigate[s] and take[s] appropriate action on all quality of care concerns," *id.* at 7 (Am. Compl. ¶ 40), and acknowledged its "continuing effort to provide quality of care and service," *id.* at 9 (Am. Compl. ¶ 49).  It declined, however, to refund to Arora the "applicable patient copay[.]" *Id.* (Am. Compl. ¶ 41).  Meanwhile, Arora switched dentists and had the crown removed.  *Id.* (Am. Compl. ¶ 45).  He eventually moved to the District of Columbia.  *Id.* at 3 (Am. Compl. ¶ 8).

Proceeding *pro se*, Arora brought this diversity action against (1) Dr. Paige and Buckhead Family Dentistry (collectively, "Buckhead"); (2) Global Dental Solutions, LLC, and Global's President, Brad Abramson (collectively, "Global"); and (3) Cigna.  As relevant here, the amended complaint asserts claims for breach of fiduciary duty and negligent

2

misrepresentation against Cigna, as well as a conspiracy claim against Cigna, Dr. Paige, and

Buckhead. *Id.* at 20–23, 26–27 (Am. Compl. ¶¶ 115–36, 155–60).

Buckhead, Global, and Cigna each moved to dismiss, Dkt. 7; Dkt. 11; Dkt. 18; Dkt. 33,

and Arora responded to all three motions,[1] Dkt. 15; Dkt. 16; Dkt. 24.  In resolving those motions,

the Court first concluded that it lacked personal jurisdiction over Buckhead and Global under

D.C.'s long-arm statute.  *Arora*, 263 F. Supp. 3d at 128.  But, rather than simply dismissing

Arora's claims against those defendants, the Court directed that the parties address whether the

case should be transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1631 given

Buckhead and Global's ties to Atlanta and the fact that "most, if not all, of the alleged events

relevant to Arora's claims occurred in Atlanta." *Arora*, 263 F. Supp. 3d at 128.  The Court

further concluded that Arora had "failed to carry his burden of showing that he . . . properly

effected service of process" on Cigna.  *Id.* at 129.  The Court, as a result, did not reach the merits

of Cigna's arguments that Arora's complaint failed to state a claim and, instead, gave Arora a

further opportunity to effect service on Cigna.  *Id.* at 134.

Each defendant opposed transfer on the ground that Arora's claims lack merit and that

transfer, therefore, would be futile.  *See* Dkt. 38 at 2–3; Dkt. 39 at 2; Dkt. 40 at 4.  Arora,

concerned about potential statute of limitations difficulties, requested transfer.  Dkt. 41 at 6–7.

He also filed a purported proof of service indicating that he had served "Cigna's Legal

Department" and "Cigna's Attorney o[f] Record."  Dkt. 42 at 1.  Because Cigna had previously

requested that the Court consider the merits of its previously-filed motion to dismiss "if [Arora]

file[d] proof of service," Dkt. 40 at 3, the Court asked Cigna to clarify whether it intended to

---

[1]  After Arora filed his opposition to Cigna's motion, Cigna submitted a corrected motion to
dismiss and reply, Dkt. 33; Dkt. 34, making non-substantive edits.  *See* Dkt. 28 at 3.

contest service and, if not, whether the Court should treat its motion to dismiss as renewed, Minute Order (Aug. 10, 2017).  Cigna, in response, waived any objection to service and renewed its earlier motion to dismiss for failure to state a claim.  Dkt. 43 at 1–2.  Arora filed a supplemental opposition.  Dkt. 46.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted).  The Court, however, need not accept "a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.  ANALYSIS

### A.      Cigna's Motion To Dismiss

1.      *Choice of Law*

Because Arora has brought a diversity action, the Court "must apply the choice-of-law rules of the forum state—here, the District of Columbia."  *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014); *see Orchin v. Great-West Life & Annuity Ins. Co.*, 133 F. Supp. 3d 138, 146 (D.D.C. 2015).  The District of Columbia uses "a modified governmental interests

4

analysis[,] which seeks to identify the jurisdiction with the most significant relationship to the dispute." *In re APA Assessment*, 766 F.3d at 51 (quoting *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006)).  The Restatement (Second) of Conflict of Laws, § 145, supplies the four factors relevant to this inquiry: (1) "the place where the injury occurred;" (2) "the place where the conduct causing the injury occurred;" (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties;" and (4) "the place where the relationship is centered."  *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995).

Applying these factors, Cigna argues that "the substantive law of Georgia applies" because "the alleged injury, the alleged conduct that caused the injury, and the relationship between the parties all occurred in Georgia."  Dkt. 33 at 12.  Arora has not raised any objection to the application of Georgia law.  The Court agrees with Cigna that the substantive law of Georgia governs this action because, by any measure, Georgia has "the most significant relationship" to the dispute.  In addition to the considerations Cigna has identified, both Buckhead and Global are based in Atlanta, Georgia.  Dkt. 6 at 3 (Am. Compl. ¶¶ 9, 11).  The only conceivable basis for applying D.C. substantive law is the fact that Arora eventually moved to the District of Columbia.  *See id.* (Am. Compl. ¶ 8).  That fact may mean that litigating in Georgia is inconvenient for Arora, but it has only marginal bearing on the relationship of the District of Columbia to the underlying dispute.

    2.    *Breach of Fiduciary Duty Claim*

The amended complaint alleges that Cigna breached its fiduciary duty to Arora because Cigna (1) "knew or should have known that Arora was (fraudulently) charged for a higher quality, more expensive crown," (2) "failed to do additional due diligence on [Buckhead] even after Cigna became aware of . . . fraud and overbilling by [Buckhead]," and (3) "continued to include [Buckhead] in Cigna's vetted and approved network of dentists."  Dkt. 6 at 20 (Am.

5

Compl. ¶¶ 117–19).  Cigna, in turn, contends that these allegations fail as a matter of law because, under Georgia law, "[i]t is well settled that there is no fiduciary relationship between the insured and the insurer or the insurer's agent."  Dkt. 33 at 13 (quoting *Nash v. Ohio Nat'l Life Ins. Co.*, 597 S.E.2d 512, 518 (Ga. Ct. App. 2004) (internal quotation marks omitted)).

Arora counters with two arguments, neither of which is persuasive.  First, he maintains that an insurance company owes a fiduciary duty to an insured when the insured has "retain[ed] [the] insurance company as part of an employer[-]sponsored plan governed" by the Employee Retirement Income Security Act of 1974 ("ERISA") and the insurer "exercises discretion" in administering the plan.  Dkt. 24 at 17.  But the amended complaint does not allege that Arora's dental insurance plan was subject to ERISA.  *See* Dkt. 6 at 4 (Am. Compl. ¶ 12) (asserting only that Cigna "was Arora's dental insurance carrier in 2012 and 2014").  And, if the plan did fall within ERISA's scope, Arora's state law claim for breach of fiduciary duty might well be preempted.  *See* 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987).

Second, Arora asserts that Cigna created a "self-imposed fiduciary duty," Dkt. 24 at 10, because its website states that it "do[es] what is right for . . . customers," *id.* (quoting Cigna's website), and Arora "reasonably relied" on that representation, *id.*  As an initial matter, the Court is unconvinced that such a representation—even assuming that Arora did, in fact, rely on it—would suffice to establish a fiduciary duty.  *See Willis v. Allstate Ins. Co.*, 740 S.E.2d 413, 418 (Ga. Ct. App. 2013).  But Arora's argument suffers from an additional flaw: it relies on factual assertions presented for the first time in his opposition to Cigna's motion to dismiss.  Because these allegations are not included in the amended complaint, they are not properly before the

Court on a motion to dismiss.[2]  *See* Fed. R. Civ. P. 12(d).  For both of these reasons, the Court can discern no basis to deviate from Georgia's rule that "[g]enerally, no fiduciary relationship exists between an insured and his or her insurer."  *Willis*, 740 S.E.2d at 417.

Accordingly, the Court will dismiss Arora's breach of fiduciary duty claim against Cigna.

3.    *Negligent Misrepresentation Claim*

To state a claim for negligent misrepresentation under Georgia law, Arora must allege (1) that Cigna negligently (and foreseeably) supplied him with false information; (2) that he reasonably relied upon that false information; and (3) that as a proximate result of that reliance, he sustained an economic injury.  *See Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 479 S.E.2d 727, 729 (Ga. 1997).  In an effort to meet this test, Arora asserts that Cigna negligently misrepresented that Dr. Paige and Buckhead Family Dentistry "were qualified, honest and ethical" when it included them in its list of "vetted, approved and recommended . . . dentists."  Dkt. 6 at 22 (Am. Compl. ¶ 126).  Moreover, he continues, "instead of disqualifying and removing" them from the list after it "became aware of [their] fraud and overbilling," Cigna "continued its negligent misrepresentation" by continuing to include them on the list.  *Id.* (Am. Compl. ¶ 129).  And, finally, Arora alleges that Cigna knew or should have known that these representations were false and that he "justifiably relied on [these] misrepresentations . . . to his injury."  *Id.* (Am. Compl. ¶¶ 131, 133).

Cigna argues that the amended complaint fails on each element of negligent misrepresentation.  According to Cigna: (1) Arora's "claims regarding Cigna's knowledge of [Buckhead's] activities" are unsubstantiated and conclusory; (2) Arora fails to state "why [his]

---

[2]  For the same reason, the Court will not consider the additional evidence attached to Arora's opposition.  *See* Dkt. 24 at 22–53.

reliance was justified;" and (3) any allegations concerning Cigna's conduct after Arora's injury "could not have contributed to [that] injury." Dkt. 33 at 14–16. Arora, for his part, does not join issue with any of these contentions but, instead, merely asserts—in a conclusory fashion—that "Cigna neglected and failed to properly audit [Buckhead] and disclose pertinent, accurate, and critical information related to Arora's quality of health care." Dkt. 24 at 18; *see* Dkt. 46 (same).

Although the Court does not agree with all of Cigna's contentions, it does agree that the complaint lacks sufficient "factual content [to] allow[] the [C]ourt to draw the reasonable inference that [Cigna] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It fails to allege any specific facts that, if true, would have put Cigna on notice *before* Arora's crown was installed that Dr. Paige or Buckhead Family Dentistry was not "qualified, honest and ethical." Dkt. 6 at 22 (Am. Compl. ¶ 126). And, he fails to allege facts sufficient to permit the Court to infer that Cigna's failure to remove Buckhead from its list of approved providers *after* he complained to Cigna about Buckhead caused him any of the injuries he alleges.

The Court will, accordingly, dismiss Arora's claim for negligent misrepresentation for failure to state a claim.

### 4. *Conspiracy Claim*

Finally, Arora alleges that Cigna, Dr. Paige, and Buckhead Family Dentistry conspired to commit fraud. A conspiracy "is a combination of two or more persons to accomplish an unlawful end." *Dyer v. Honea*, 557 S.E.2d 20, 25 (Ga. Ct. App. 2001) (citation omitted). In civil actions, the conspiracy itself "furnishes no cause of action;" rather, "[t]he gist of the action" is "the tort committed against the plaintiff and the damage thereby done." *First Fed. Sav. Bank v. Hart*, 363 S.E.2d 832, 833 (Ga. Ct. App. 1987) (citation omitted). To prove fraud, Arora must establish "(1) a false representation by a defendant, (2) scienter, (3) intention to induce the

plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff." *Engelman v. Kessler*, 797 S.E.2d 160, 166 (Ga. Ct. App. 2017).

Arora accuses Cigna, Dr. Paige, and Buckhead Family Dentistry of conspiring "to conceal [the] fraudulent substitution" of the "higher quality crown" that Arora was "promised" with a "lower quality crown." Dkt. 6 at 27 (Am. Compl. ¶ 157). According to the amended complaint, Cigna "knew or should have known" of the substitution yet "intentional[ly]" concealed it in two ways. *Id.* at 27 (Am. Compl. ¶¶ 157–58). First, Cigna "document[ed]" that he received a higher-quality crown in connection with his claim for a refund. *Id.* at 7–8 (Am. Compl. ¶¶ 39–41); *see* Dkt. 24 at 19 ("Cigna . . . confirmed that [Arora] was invoiced for a [h]igher [q]uality [c]rown . . . ."). Second, Cigna knew of Buckhead's fraudulent substitution but "continued" to represent that Dr. Paige and Buckhead Family Dentistry were "qualified and duly vetted dental professionals" by including them on its "list of approved" dentists. Dkt. 24 at 18.

Again, Arora fails to allege any specific facts that would permit the Court "to draw the reasonable inference that" Cigna made any intentional or negligent misrepresentations to him, which he relied upon to his detriment. He fails to allege any facts even suggesting that Cigna had reason to believe that Dr. Paige and Buckhead Family Dentistry would provide him with an inferior-quality crown, while charging him *and Cigna* for a more expensive crown. He fails to allege any facts even suggesting that Cigna later became aware of any such wrongdoing and took steps to mislead him about it. And, he fails to allege any facts even suggesting that Cigna was operating in cahoots with Dr. Paige and Buckhead Family Dentistry or that it helped to perpetrate or to conceal their purported misconduct.

Arora's failure to allege any facts that would support the inference that Cigna conspired with others to defraud him must also be understood in light of Rule 9(b), which requires that a

party alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  A claim alleging conspiracy to commit fraud—no less than a claim alleging fraud alone—implicates the heightened pleading standards of Rule 9(b).  *See Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 42 (D.D.C. 2013); *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 141 (D.D.C. 2013).  Here, Arora offers no details about how Cigna purportedly conspired to defraud him, and thus this claim cannot stand.

The Court will, therefore, dismiss Arora's conspiracy claim against Cigna under Rules 12(b)(6) and 9(b).

**B.     Transfer**

The Court previously determined that it lacked personal jurisdiction over Global, Abramson, Buckhead, and Dr. Paige and directed that the parties address whether this action should be transferred to the U.S. District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1631 or 28 U.S.C. § 1406(a).  *See Arora*, 263 F. Supp. 3d at 128–29.  Having considered the parties' respective positions, the Court now concludes that transfer is warranted under 28 U.S.C. § 1631.

In enacting 28 U.S.C. § 1631, Congress sought to "aid litigants who [are] confused about the proper forum for review" and file suit in the wrong place.  *Am. Beef Packers, Inc. v. ICC*, 711 F.2d 388, 390 (D.C. Cir. 1983).  Section 1631 provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . .

28 U.S.C. § 1631.  In other words, § 1631 requires transfer where three conditions are met: first, the transferring court lacks jurisdiction; second, the transferee court has jurisdiction; and third,

10

transfer would serve the ends of justice.  *See Janvey v. Proskauer Rose, LLP*, 59 F. Supp. 3d 1, 4–5 (D.D.C. 2014).

The Court has already concluded that it lacks personal jurisdiction over Global, Abramson, Buckhead, and Dr. Paige.  *See Arora*, 263 F. Supp. 3d at 128.  The Court is also convinced that the U.S. District Court for the Northern District of Georgia would have personal jurisdiction over those defendants; Arora alleges that each of them is located in Atlanta, Georgia, and none of them disputes that assertion.  *See* Dkt. 38; Dkt. 39; Dkt. 40.  They do, however, contend that the federal courts—including this Court and the District Court for the Northern District of Georgia—lack subject matter jurisdiction because the amount in controversy does not exceed $75,000, as required to establish diversity jurisdiction.  *See* 28 U.S.C. § 1332; *see also* Dkt. 38 at 2; Dkt. 39 at 2; Dkt. 40 at 3 n.1.  That contention faces a high hurdle, which it fails to clear.

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith."  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014).  To justify dismissal, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276 (1977) (quoting *St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  Here, Arora has pled that the amount in controversy exceeds $75,000, Dkt. 6 at 2 (Am. Compl. ¶ 5), and it is not apparent to "a legal certainty" that his "claim is really for less than" $75,000.  To be sure, Arora has failed to identify any theory of actual damages that comes close to $75,000.  But he also seeks punitive damages, *see, e.g.*, *id.* at 12–13 (Am. Compl. ¶ 72), which are available under Georgia law, *see* Ga. Code Ann. § 51-12-5.1.  It may seem a stretch that Arora would be entitled to such a large judgment, even were he to prevail on the merits.

Likelihood of success, however, is not the standard, and Arora has pled enough to invoke diversity jurisdiction.

Finally, the Court concludes that transfer to the Northern District of Georgia would serve the interest of justice.  As a *pro se* plaintiff, Arora is precisely the type of litigant Congress aimed to assist in enacting § 1631.  Courts have concluded that transfer is warranted when "the original action was misfiled by a *pro se* plaintiff."  *Janvey*, 59 F. Supp. 3d at 7; *see, e.g.*, *Evans v. U.S. Marshals Serv.*, 177 F. Supp. 3d 177, 182 (D.D.C. 2016).  Here, moreover, dismissal—as opposed to transfer—could cause Arora substantial prejudice, while the only prejudice that transfer would cause the defendants is the time and cost of defending the action.  As the Court has previously observed, if it were to dismiss the action, the relevant statutes of limitations might preclude Arora from pursuing his claims.  *Arora*, 263 F. Supp. 3d at 132–33.  The interest of justice would not be served by inflicting that penalty on a *pro se* litigant merely because he mistakenly filed in the wrong venue.  *See Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 430 (1965) ("If by reason of the uncertainties of proper venue a mistake is made . . . 'the interest of justice' may require that the complaint . . . be transferred in order that the plaintiff not be penalized by . . . time-consuming and justice-defeating technicalities." (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (internal quotation marks omitted)); *Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983) (noting that "[t]ransfer is particularly appropriate where . . . without a transfer the cause of action would be barred by the running of the applicable statute of limitations").  And, although the time and cost that defendants will incur in defending the action are undoubtedly burdensome, they do not constitute the type of burden that typically weighs against transfer.

Defendants focus their argument against transfer on the principal exception to this final point: where a case plainly lacks merit, transfer would do little to assist the plaintiff and would impose *unnecessary* burdens on the defendants.  As the Court of Appeals for the Seventh Circuit has put it, "there is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed."  *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999); *see also Daniels v. Dep't of Interior*, No. 94-5131, 1995 WL 364505 (D.C. Cir. 1995); *Boultinghouse v. Lappin*, 816 F. Supp. 2d 107, 113 (D.D.C. 2011).  At the same time, however, where a court has concluded that it lacks personal jurisdiction, the interest of justice inquiry under 28 U.S.C. § 1631 ought not open the door to a full-throttled review of the legal adequacy of the plaintiff's claims.  Rather, a court considering whether to transfer an action need only—and should only—engaged in "a limited review of the merits," *Boultinghouse*, 816 F. Supp. 2d at 113, and ask whether transfer would constitute a "waste[]" of the parties' and the courts' resources, *Daniels*, 1995 WL 364505, at *1.

Defendants have failed to meet that burden—or, indeed, to show that Arora is unlikely to prevail.  Although a number of his claims are questionable, at base he alleges that he received negligent dental care and that he was fraudulently charged for a more expensive crown than he actually received.  There is nothing novel about either claim, and the Court cannot conclude based on what is now before it whether Arora is likely to prevail.  The interests of justice would be served, however, by providing him with the opportunity to try.

The Court will, accordingly, order that the case be transferred to the U.S. District Court for the Northern District of Georgia, where the remaining defendants will be free to raise their defenses.

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Cigna's renewed motion to

dismiss, Dkt. 33, is **GRANTED**; and it is further

> **ORDERED** that Cigna is **DISMISSED** as a defendant in this action; and it is further

> **ORDERED** that Cigna's motion to rule on its renewed motion to dismiss, Dkt. 45, is

**DENIED** as moot; and it is further

> **ORDERED** that this case be **TRANSFERRED** to the U.S. District Court for the

Northern District of Georgia pursuant to 28 U.S.C. § 1631.

> **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  January 8, 2018